```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
: DONINI INTERNATIONAL, S.P.A.,                        :
:                                                      :    03 Civ. 9471 (CSH)
:                              Plaintiff,              :
:                                                      :
:           -against-                                  :
:                                                      :    MEMORANDUM OPINION
:                                                      :    AND ORDER
: SATEC (U.S.A.) LLC and                               :
: CLEANERS FAMILY, INC.,                               :
:                                                      :
:                              Defendants.             :
-------------------------------------------------------x
```

HAIGHT, Senior District Judge:

Before the Court are motions from both plaintiff and defendants arising out of the Court's prior opinion in this case granting defendants' motion to dismiss plaintiffs' claims against defendant Satec (U.S.A.) LLC ("Satec"). Plaintiff Donini International, S.P.A. ("Donini) moves pursuant to Rule 60(b), Fed. R. Civ. P., for an order to reinstate the complaint against Satec. Defendant Cleaners Family, Inc. ("Cleaners Family") makes a supplemental motion to dismiss the New York state law claims for dilution under New York General Business Law ("NYGBL") § 360.1 and for deceptive trade practices under NYGBL § 349. Plaintiff moves additionally for costs incurred pursuant to Rule 30(g), Fed. R. Civ. P. Defendant Cleaners Family opposes this motion and moves to dismiss the complaint in its entirety pursuant to Rule 37, Fed. R. Civ. P.

BACKGROUND

The facts of this case are stated in my prior opinion reported at 2004 WL 1574645 (S.D.N.Y. Jul. 13, 2004), familiarity with which is assumed. Knowledge of those facts is necessary to decide this motion to reinstate the complaint against defendant Satec, and

1

accordingly I repeat the relevant facts below, before discussing the subsequent developments between the parties.

Plaintiff is an Italian corporation that specializes in the manufacture, sale, and distribution of commercial dry cleaning equipment. Defendant Satec is a New Jersey corporation that sells and distributes commercial dry cleaning equipment manufactured by non-party Satec GMBH, a German corporation. According to the Memorandum of Law filed by Satec in support of its motion to dismiss the complaint in its entirety ("Satec's Motion"), the "two members of" Satec are Abraham Cho and Esther Cho. Satec's Motion at 4. Neither Abraham Cho nor Esther Cho is a party to the present suit. Defendant Cleaners Family, Inc. ("Cleaners Family"), a New Jersey corporation, publishes a trade magazine that caters to the dry cleaning and laundry industry. Cleaners Family is a sole proprietorship of Abraham Cho and Esther Cho. Satec's Motion at 4. Cleaners Family is, however, under the day-to-day charge of Jung Chull Choi, who is also not party to the present suit. *Id.*

Plaintiff was a presenter at an April 2002 trade show for the dry cleaning industry held in the Netherlands. Complaint ¶ 26. In particular, plaintiff had on display its model known as the "Swing T320." *Id.* During a demonstration of the machine on April 6, 2002, a section of glass on the door of the machine broke, allowing some solvents previously contained in the machine to leak out. *Id.* What caused the glass to break and how extensive was the damage to the machine are disputed issues of fact. Plaintiff claims that the break was minor and due entirely to a defect in the glass. Defendants claim that the machine exploded, ejecting pieces of broken glass some distance from the machine and precipitating the release of noxious fluid and gas.

Defendant Cleaners Family reported its version of these events in a June 2003 article in Cleaners Family magazine dealing principally with the potential dangers of hydrocarbon dry

cleaning machines. Complaint ¶¶ 19-25. Specifically, this article included a picture of what was purported to be the Swing T320 machine on display at the April 2002 show with its door "completely exploded and broken." Complaint ¶ 23. The article went on to provide commentary critical of the manufacture and safety of Donini dry cleaning machines. Complaint ¶ 24.

Plaintiff, through counsel in Italy, contacted Satec and Satec GMBH via letter on July 3, 2003. Complaint ¶¶ 39-41. In that letter, plaintiff contested the accuracy of the June 2003 article in Cleaners Family magazine and requested that Satec and Satec GMBH publish a correction in the next edition of Cleaners Family magazine. Plaintiff did not receive a response to this request. *Id.*

Another article critical of the manufacture and safety of Donini products appeared in the November 2003 edition of Cleaners Family magazine. Complaint ¶¶ 18-19, 36. This article also referred to events at the April 2002 trade show, again alleging that the Swing T320 had exploded during a demonstration.

In these circumstances, Donini filed its complaint asserting that Satec and Cleaners Family conspired to harm plaintiff's reputation, business prospects, and trademark by publishing false, misleading, and libelous statements about Donini and Donini products in the June 2003 and November 2003 editions of Cleaners Family magazine, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Donini moved for a preliminary injunction, which resulted in an evidentiary hearing. I denied an injunction because the relief requested amounted to an impermissible prior restraint of expression. 2004 WL 1574645, at *7-*8.

Defendant Satec moved to dismiss for failure to state a claim on the ground that plaintiff had failed to show any connection between Satec and Cleaners Family that could support a claim. This Court agreed, concluding that "the Complaint does not provide a factual basis from

which it can be inferred that Satec did anything to cause the offending articles to be published by Cleaners Family or that Satec is otherwise liable for the contents of Cleaners Family magazine." 2004 WL 1574645, at *4. The Court also granted defendant Cleaners Family's motion to dismiss the Lanham Act claim with respect to Cleaners Family.

Subsequent to the Court's ruling, the parties corresponded regarding two aspects of discovery, although the parties were at the time unable to agree with one another as to a formal discovery conference or timetable. Kimm letter dated September 30, 2004. Defendants sought to depose P.N.M. Wannekes, the General Secretary of the April 2002 trade show, in the Netherlands, whose July 2003 letter plaintiff attempted to submit at the preliminary injunction hearing. *Id.* On October 8, 2004, Defendants noticed the deposition of Wannekes for October 15, 2004 in the Netherlands. On October 12, 2004, plaintiff's counsel sent a fax to defendants' counsel requesting that defendants provide a specific site for the deposition, and informing defendants' counsel that Wannekes is not plaintiff's witness: "He was not called at the court hearing and the statement was submitted as a part [sic] who ran the trade show." Defendants' Opposition to Omnibus Motion, Ex. E. On October 14, 2004, defendants' counsel faxed a letter to plaintiff's counsel stating that defendants no longer intended to take Wannekes' deposition, "'i]n view of your recent memo and our telephone discussion yesterday that Wannekes will not be offered as plaintiff's trial witness." *Id.*, Ex. F. The affidavit of defendants' counsel asserts that defendants' counsel spoke by telephone with plaintiff's counsel on October 12, 2004, the day of plaintiff's counsel's fax, and "advised him that, so long as plaintiff was not intending to list Wannekes as its witness, as it appeared to do in its Order to show cause application papers, then Cleaners Family would not be proceeding with the deposition in Holland." Kimm Decl. ¶ 7. According to defendant counsel's affidavit, the October 14, 2004 letter served as confirmation of

the cancellation by phone. Plaintiff's papers make no mention of any telephone conversations between counsel. Plaintiff submits receipts for airfare, hotel accommodations, and car rental costs, incurred by Matteo Pozzi, a Donini officer who it is alleged incurred these costs, including the hiring of local counsel, and traveled to the Netherlands in order to attend the Wannekes deposition. Plaintiff's Omnibus Motion ¶¶ 4-5, Exs. 5-8.

A second discovery dispute arose in relation to defendants' request for production of the dry cleaning machine damaged at the April 2002 trade show. In response to the October 21, 2004 Order directing plaintiff to "provide defendants' counsel and any designated expert or consultant with access, in Holland, to the "Swing T320" dry cleaning unit, damaged at the April 2002 trade show," plaintiff's counsel communicated that he was "informed that the door was repaired shortly after the incident…The glass my Client believes, was discarded shortly after." Defendants' Opposition to Omnibus Motion, Ex. H. Plaintiff's counsel stated further that Donini does not control the company that is allegedly storing the machine. *Id.* Plaintiff offered a "similar machine…in New Jersey" for defendants' inspection. *Id*.

The present motions fall into two categories. The first set arises out of this Court's ruling dismissing the Lanham Act claims as to both defendants. The second arises out of the parties' discovery disputes. The Court's decision prompted motions from both plaintiff and defendants. Plaintiff moves to reinstate the complaint against Satec pursuant to Rule 60 (b)(2) on the basis that newly discovered evidence supports the claim that Satec conspired with Cleaners family to harm plaintiff's reputation, business prospects, and trademark in violation of Lanham Act, 15, U.S.C. § 1125(a)(1)(B). Defendant Cleaners Family brings a supplemental motion, pursuant to the Court's opinion, seeking to dismiss state law claims of dilution under New York General Business Law (NYGBL) § 360.1 and deceptive trade practices under NYGBL §349 as "Lanham

5

Act analogues". Plaintiff and defendants have also filed motions arising out of their initial discovery endeavors. Plaintiff brings a motion under Rule 30(g), Fed. R. Civ. Proc., for costs and attorneys fees related to the Wannekes deposition, noticed but later cancelled by defendants. Defendants move pursuant to Rule 37, Fed. R. Civ. Proc., to dismiss the complaint, or alternatively for an adverse inference jury instruction, in relation to plaintiff's alleged spoliation of evidence, having failed to preserve the Swing T320 unit.

DISCUSSION

For the reasons that follow, I deny plaintiff's Rule 60(b)(2) and Rule 30(g) motions, grant defendants' motion to dismiss the NYGBL §§ 349, 360-1 claims, and decline to rule on defendants' Rule 37 motion, as the issue is not yet ripe for decision.

A. Rule 60(b)(2) Motion

The main claim presented in Donini's Omnibus Motion appears to be a motion for relief from the Court's judgment dismissing the claim against Satec on the basis of newly discovered evidence pursuant to Rule 60(b)(2), Fed. R. Civ. P. Plaintiff's theory is difficult to follow as plaintiff failed to submit a separate memorandum of law in support of its Omnibus Motion, and presented its legal arguments in summary format through an affidavit of plaintiff's counsel. Donini seeks relief from the Court's dismissal of all claims against Defendant Satec.

Rule 60(b)(2) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: … (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

The Second Circuit has articulated a four prong standard for granting relief from a judgment on the basis of newly discovered evidence. "[T]he movant must demonstrate that (1)

the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. IBT*, 247 F.3d 370, 392 (2d Cir. 2001) (alteration in original) (quoting *Frankel v. ICD Holdings S.A.*, 939 F.Supp. 1124, 1127 (S.D.N.Y. 1996).

Donini presents three exhibits containing evidence it claims to be newly discovered evidence undermining the basis for the Court's prior decision dismissing all claims against Satec. Exhibit 1 is a declaration of Blue Jong-Kyu Kang, the president of a dry cleaning equipment company. Plaintiff Omnibus Motion, Ex. 1. Kang's declaration asserts the following facts: Kang saw Choi at a dry cleaners convention on October 2 and 3, 2004. On each day, Choi was present at the Satec booth wearing "a badge stating his name and Satec;" Kang overheard Choi introducing himself at this convention as a representative of Satec; and Kang saw Choi at the same convention in 2002, where Choi told Kang "he had moved back from California to work for SATEC(USA)." *Id.*

Exhibit 2 is a declaration of Rene Hernandez, owner of Miami Mechanical, Inc., presumably involved in the dry cleaning business. Hernandez asserts that he called Satec's toll-free number on October 11, 2004 and spoke with Choi, who provided him with detailed information as to the safety, performance, and price of Satec products.

Exhibit 3 is a photocopy of what is purportedly Choi's business card, consisting of three, handwritten lines: Choi's name, the titles "Marketing Director", and the company "Satec U.S.A. LLC."

Donini fails altogether to meet the second prong of the test, requiring justifiable ignorance of the facts despite due diligence. Plaintiff's motion does not present any evidence whatsoever to account for its prior ignorance of the evidence. The declarations now submitted are those of Satec customers or competitors. There is no explanation offered as to why these individuals were not contacted prior to the disposition of plaintiff's motion for a preliminary injunction and defendants' motion to dismiss.

Furthermore, most of the new evidence does not meet the requirements of the first prong. All the new evidence is offered to support plaintiff's counsel's statement that Choi "has been an employee of Satec (USA) LLC throughout the entire period." Quill Decl. ¶ 3. Yet almost all Donini's newly discovered evidence refers to facts occurring in October 2004, well after the dismissal of Donini's claims as to Satec. Evidence of Choi's October 2002 statement that he had moved back from California "to work for SATEC(USA)" is the only piece of evidence that could survive the prong one requirement that the movant present evidence of facts existent at the time of the motion to dismiss.

A failure to satisfy any one of the elements of the test is sufficient to defeat the Rule 60(b) motion. Considering the merits of the claim, that is, whether the facts above would be sufficient to change the outcome of the decision is nonetheless worthwhile in the interests of a just resolution of the claim. All Donini's claims derive from the content of the June 2003 and November 2003 editions of Cleaners Family magazine. Responsibility for the edition's content is reasonably ascribed to Cleaners Family, the company that publishes the magazine. Plaintiff attempted to establish Satec's liability as well, by alleging a conspiracy between the two defendant companies. As described in the Court's prior opinion, the facts do not meet the elements of conspiracy, requiring evidence of a corrupt agreement between the two parties, an

overt act, intentional participation in the furtherance of the conspiracy, and a causal connection to the claimed damages. The newly discovered evidence does not provide facts as to any of these elements. Alternatively, it appears that Donini alleges actual corporate control of Cleaners Family by Satec. The facts alleged originally to support this conclusion seemed to be that both entities are alleged to be at least partially owned by the same people, Abraham Cho and Esther Cho, and that both entities have the same address. Donini now adds the alleged fact that Choi works for both corporate entities, relying on Choi's alleged statement that he moved from California to work for Satec. These facts still do not constitute a factual basis from which Satec's responsibility for the offending articles, published by Cleaners Family, can be imputed. Plaintiff's Rule 60(b) motion is therefore denied, and the Court adheres to its prior ruling dismissing Donini's claim against Satec.

B. Supplemental Motion to Dismiss NYGBL §§ 360.1, 349

For the purposes of "a 12(b)(6) motion a court must treat as true the pleading's factual allegations," *Toussie v. Powell*, 323 F.3d 178, 180 (2nd Cir., 2003), and draw all reasonable inferences from those facts in favor of the plaintiff. *See Gant v. Wallingford Board of Education*, 69 F.3d 669, 673 (2d Cir. 1995). The Court must not dismiss the action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Frasier v. G.E. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," 2 James Wm. Moore, *Moore's Federal Practice* § 12.34[1][b] (3d ed. 2001). *See also Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir.

1997), (the holding in *Conley v. Gibson* "does not permit conclusory statements to substitute for minimally sufficient factual allegations") (citations and internal quotations marks omitted).

Cleaners Family now moves to dismiss two New York state law claims on the basis that the claims are "Lanham Act analogues" and that they therefore fail for the same reasons that plaintiff's Lanham Act claim was dismissed. Supplemental Motion to Dismiss at 1-3. While §§349 and 360-1 of the New York General Business Law (NYGBL) are not mere Lanham Act analogues, as Cleaners Family asserts, plaintiff nonetheless fails to state a claim under either.

*Deceptive Trade Practices*

Donini asserts a claim for deceptive trade practices under NYGBL § 349 against Cleaners Family. Section 349 of the New York General Business Law proscribes "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

To assert a claim under §349, a plaintiff must prove that (1) the act or practice was consumer oriented; (2) the act or practice was misleading in a material way; (3) the plaintiff suffered an injury as a result of the deceptive practice. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *see also Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001) (citing *Stutman* for the proposition that "a Section 349 violation requires a defendant to mislead the plaintiff in some material way"). While §349 is a broad consumer protection measure, commercial plaintiffs or competitors can state a claim under §349 where injury to consumers at large is alleged. However, courts hold that such nonconsumers state a claim only when they allege harm to public health or safety. *Securitron* 65 F.3d 256, 264-5 (2d Cir 1995); 1997 wl 137443 at *2). Courts have rejected claims in which alleged harm to a plaintiff's business far outweighs any incidental

harm to the public at large. *Fashion Boutiqueof Short Hills, Inc. v. Fendi USA, Inc.,* No. 91 Civ. 4544, 1992 wl 170559 at *4. "The gravamen of the complaint must be consumer injury or harm to the public interest." *Azby Brokerage Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 n.6 (SDNY 1988). Injury or harm that satisfies this standard includes "potential danger to the public health or safety." *Gucci America v. Duty Free Apparel, Ltd.*, 277 F.Supp.2d 269 (S.D.N.Y. 2003) (internal ciations omitted). *See Weight Watchers International, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259 (S.D.N.Y. 1990) (finding competitor may bring §349 claim where false advertising misled public as to diet and food); *Excellus Health Plan v. Tran*, 287 F.Supp.2d 167, 180 (N.D.N.Y. 2003). Where the substance of the claim is harm to another business, the harm to the public may be deemed too insubstantial to constitute a §349 claim. *Id*.

The gravamen of the claim here is harm to Donini's business. The only indication plaintiff provides of impact to consumers is that two dry clean customers refused to accept delivery of Donini hydrocarbon machines sometime after June 2003. Compl. at ¶ 37. Even were such facts primarily reflective of impact to consumers rather than to Donini's business interests, all other facts in the complaint allege harm to Donini's sales and reputation. ¶¶ 34, 56-57, 61-62, 65. Plaintiff alleges, for example, that dry cleaning machine dealers selling competitors' products informed people that a Donini machine exploded. *Id.* at ¶ 38. The alleged impact being such, plaintiff does not have a cognizable cause of action under §349.

*Dilution*

Donini's dilution claim under NYGBL §360-1 fails to state a claim. Section 360- 1 of the New York General Business law provides:

> Likelihood of injury to business reputation or of dilution of the
> distinctive quality of a mark or trade name shall be a ground for

> injunctive relief in cases of infringement of a mark registered or
> not registered or in cases of unfair competition, notwithstanding
> the absence of competition between the parties or the absence of
> confusion as to the source of goods or services.

In order to state a §360-1 claim, a plaintiff must have a distinctive mark capable of dilution, and must demonstrate a likelihood of dilution. *Information Superhighway, Inc. v. Talk America, Inc.*, 395 F.Supp.2d 44, 56 (S.D.N.Y. 2005). The distinctiveness of Donini's mark has not been called into question. *N.Y. Stock Exchange, Inc. v. New York, New York Hotel, LLC,* 293 F.3d 550, 557 (2d Cir.2002). Accordingly, the only question is whether there is a likelihood of dilution. *Id.* Dilution can mean either blurring or tarnishment. *Id.* Neither of these forms of dilution is at issue in the instant case.

The Second Circuit describes blurring as a defendant's use or modification of plaintiffs' trademark as a means of identifying defendant's own goods and services. *Deere & Co. v. MTD Prod., Inc.,* 41 F.3d 39, 43 (2d Cir.1994). Such usage runs the risk that the mark will lose its ability to serve as a unique identifier of plaintiff's product. *Id.* Tarnishment occurs when a mark is "linked to shoddy products or portrayed in an unsavory context resulting in the public associating a lack of quality or prestige with the plaintiff's products." *N.Y. Stock Exchange*, 293 F.3d 550, 558. Since Donini makes no allegation that Cleaners Family used Donini's trademark to identify its own goods, a blurring claim is clearly inapposite. To make out a §360-1 claim for tarnishment, plaintiff's goods must have been associated with that of defendant in a manner that tarnishes the value or reputation of plaintiff's good. Here, plaintiff alleges that the reputation of its goods has been tarnished, but not by associating defendants' products with Donini's. Defendant is a trade magazine, while plaintiff is a dry cleaning equipment manufacturer. There is no presence of dilution here.

C. Plaintiff Motion for Costs Incurred under Rule 30(g)

Donini seeks expenses and attorney's fees pursuant to Rule 30(g), Fed. R. Civ. Proc. Rule 30(g) provides in pertinent part:

> (1) If the party giving the notice of the taking of a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving the notice to pay reasonable expenses incurred by that party and that party's attorney in attending, including reasonable attorney's fees.

Courts allow the award of attorney's fees and expenses where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other. *See, e.g., Pine Lakes International Country Club v. Polo Ralph Lauren Corporation*, 127 F.R.D. 471, 472 (D.S.C. 1989). The record before the Court reveals the following facts. Plaintiff alleges in support of its motion that on October 8, 2004, defendant noticed the Wannekes deposition to take place on October 15, 2004 in the Netherlands. Quill Decl. ¶ 4, Ex. 4. Plaintiff's counsel communicated with counsel for defendant via fax indicating that there was "no place specified in the notice," presumably referring to the fact that defendant's notice did not specify any more particular a location than "the Netherlands." Quill Decl. ¶ 4, Ex. 5. On the afternoon of October 14, 2004, plaintiff's counsel received a letter by fax from defense counsel notifying counsel that the defendants no longer intended to depose Wannekes. Quill Decl. ¶4, Ex. 6. Plaintiff's motion includes copies of the receipts as proof of the expenditure undertaken by Pozzi allegedly as a result of defendants' insufficient notice of the deposition's cancellation. Quill Decl. Exs. 7-8. There is no indication as to the time of day at which the October 14, 2004 letter was received, nor is the date or time of Pozzi's travel plans discernable from the photocopied receipts and itinerary submitted to the Court. Thus the practicalities of communicating defendants' cancellation to Pozzi on October 14, 2004 are unclear. If the first notice of cancellation arrived

13

to plaintiff's counsel in New York in the afternoon, this would amount, at best, to a late evening communication with Pozzi—who may at that time have already begun his travels for the following morning's deposition. We are unable to determine these practicalities, however, because we neither know the time at which the fax was received in New York, nor the date and time of Pozzi's travel plans. Without having to work out such details, however, defendants' submission calls into question the insufficiency of the notice provided plaintiff. Defendants' counsel asserts that he informed plaintiff's counsel that he no longer intended to depose Wannekes at least one day prior to the October 14, 2004 fax.[1] Plaintiff offers no facts contradicting the assertion that notice was provided by phone on October 13, 2004, at the latest, and that the October 14, 2004 letter served as written confirmation of the telephone understanding. Thus it appears that plaintiff was provided oral notice of cancellation at least two days prior to the deposition. I do not find that this constitutes insufficient notice of cancellation warranting the award of attorneys' fees and costs. Without further facts indicating that Pozzi's expenditures could not have been averted on two days' notice, I cannot award costs to plaintiff for its expense.

D. Defendant Motion to Dismiss for Destruction of Key Evidence

Defendants move pursuant to Rule 37, Fed. R. Civ. Proc., to dismiss the complaint, or in the alternative, for an adverse inference charge, as a result of Donini's alleged spoliation of evidence related to the Swing T320 machine.

---

[1] The date of the telephone call is unclear. Defendants' counsel asserts, in his declaration opposing Plaintiff's Omnibus Motion, that the conversation took place on October 12, 2004: "On October 12, 2004, plaintiff's counsel wrote a fax objecting to the deposition notice…That day, I telephoned attorney Quill and advised him that…Cleaners Family would not be proceeding with the deposition in Holland." Kimm Decl. ¶ 7. The October 14, 2004 letter states, however, that it was submitted "[i]n view of…our telephone discussion *yesterday*" (emphasis added), which would indicate that the conversation took place on October 13, 2005.

Spoliation is "the destruction or significant alteration of evidence or the failure to preserve the property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 67 F.3d 776, 779 (2d Cir. 1998) (internal quotation marks and citations omitted). Courts take seriously, and condemn a spoliator in the strongest terms. A much quoted condemnation appears in *Pomeroy v. Benton*, 77 Mo. 64, 86 (1882): "The law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidently employed to perpetrate the wrong."

In federal civil practice, spoliation is sanctionable under Rule 37(b). *See West*, 167 F.3d at 779 ("A federal district court may impose sanctions under Fed.R.Civ.P. 37(b) when a party spoliates evidence in violation of a court order.") (citation omitted). A district court "has broad discretion in crafting a proper sanction for spoliation," and while "outright dismissal of a lawsuit" is within that discretion, and is appropriate "if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party," nonetheless "because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Id*. (citations and internal quotation marks omitted). The inquiry is fact intensive, as the Second Circuit stressed in *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999):

> Our case-by-case approach to the failure to produce relevant evidence seems to be working. Such failures occur along a continuum of fault -- ranging from innocence through the degrees of negligence to intentionality. Trial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing -- a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case.

(citations and internal quotation marks omitted).

15

In determining whether a court should impose sanctions for spoliation, it is necessary to inquire at the threshold whether a party had any obligation to preserve the evidence. A litigant who is on notice that information or artifacts in its possession are relevant to litigation, or potential litigation, and destroys such information or artifacts, may be sanctioned. *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y. 1991). No duty to preserve arises unless the party possessing the evidence has notice of its relevance. *Danna v. New York Telephone Co.*, 752 F.Supp. 594, 616 n.9 (S.D.N.Y. 1990). This threshold question in the instant case requires knowledge of the following facts: (1) when was the Swing T320 machine repaired; and (2) when was the glass discarded. If the repairs were made before the June 2003 Cleaners Family article was published, plaintiff could not have been on notice that the evidence might be relevant to potential litigation and therefore no duty to preserve could have arisen. If defendants meet this threshold burden and provide evidence of Donini's obligation to preserve the Swing T320, more facts will be required to determine the relevance and uniqueness of evidence that might have been available through direct inspection by defendants. For example, whether or not records were kept or reports made regarding the repairs undertaken will be necessary in determining whether defendants may nonetheless have access to equivalent evidence in absence of the actual machine involved in the April 2002 incident.

In the case at bar, the absence of facts regarding timing of repairs undertaken on the Swing T320 machine deprives the Court of important elements necessary to a decision on defendant's motion. Since the parties have not yet held a formal discovery conference, nor set down a timetable for discovery, it is likely that many of the facts necessary in deciding this motion will be revealed once discovery commences. The motion may therefore be considered closer to trial, once discovery is complete.

Counsel for the parties are directed to hold the conference mandated by Rule 26(f), F. R. Civ. P. and submit to the Court the report also mandated by that Rule on or before April 14, 2006. A Rule 16(b) scheduling order will then be entered.

The foregoing is SO ORDERED.

Dated: New York, New York
March 16, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE